Thank you for being faced to court in this area on behalf of Justice McFarland. Ms. Gaytan can also be heard in speech, but she also represents a challenge to the United States. I will be heard in talking on behalf of those who survived Mr. McFarland's death. I would like to present file number 115. In this case, the source is Dr. Hale, who challenged many of the district courts to seek to guard the government's peace and oppose. She provided evidence that the state should not maximize the power of the government in terms of the judicial and the scientific aspect of the statute. Basically, you have the discretionary and the competence to determine the traits of the act. You have the authority and the discretionary to make use of it, and you decide to make use of it. I'm going to take a moment to hear more from you about the facts of the case, and the story, and the interpretation of what's in the text. Mr. President, as you're aware, the Johnson-McFarland investigation case is a much-undervalued case. I would go back and try to follow up. I appreciate the significance of this. So, please, if you want to try to follow up, I would encourage you to communicate to the sides of the jury questions of all cases you need to follow up on. We'll do that. We'll do the big conversation as well. Thank you. Thank you very much. This case requires that the governor's charge be made to the jury that all three charges involve criminal violence. Clause 1 and 3, the crime of violence, is the same as Clause 2, but the crime of violence falls under two statutes. In Clause 1 and 3, it's H.L.U.C.C.C.B. In H.L. 2, it's 924C. Johnson has made it impossible for this court to affirm the convictions in this case because the government did not prove a crime of violence existed. The crime of violence at issue is a matter of residential burglary. The government has already seen that that does not meet the force elements of H.L.U.C.C.B. or 924C. So what we're left with is exactly what the city of Portland is left with when we look at H.L.U.C.C.B.'s residual costs, and that is whether the crime of violence of a matter of residential burglary falls within the residual costs in H.L.U.C.C.B. or Dr. Johnson made it so that you're not under the minor. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. I don't think there's any legal difference between this and the fact that civil and criminal sanctions are permanent or permanent. In the overall, the Supreme Court said that you still don't have the same conditional review to determine if crimes were committed under civil sanctions or a criminal sanction. And I would argue the fact that Mr. Andrade is trying to do the same kind of thing. No, I mean, I would argue that the issue is that it's addressed in a way that is on the civil side. It's a issue that is still to be reached. And I think it's important to watch how civil communities work. I would say that I would put those issues to the public court. It would be a common opinion. It doesn't matter what the Supreme Court ruled. Yes, I would say that you can compare that to the fact that the Supreme Court has said that the population is changing. We've seen that in many parts of the U.S. as well. And I would say that that's one of the issues that the Constitutional Court has been trying to deal with. And that's one of the other issues that has been trying to deal with. Yes. I would argue that in one of those particular cases, you can sort of talk about how courts are stopping the release of climate violence. That's not going to change unless the Supreme Court accepts it. And I would argue that some of these same cases in Florida have been submitted to the Florida Supreme Court. I would say that the Supreme Court has been defying all of those issues in Florida. And I would say that it's an issue that's going to be there for a very long time. And by the time that they get to it, it's too late.  If I missed Governor Grace's first remarks, then this Court rejects it. It's too late. So, while the governor was right to point out even a little bit of a case like Johnson's, Johnson came out to increase the decisional thoughts left in the tendency on what makes this case the ordinary case in the room, and two, what is exactly the degree of person needs to be there that makes this in 924-C, 924-E, and 16-B, the same exact analysis should be applied. And what do we make of our footnotes at the very end of the divided opinion, where the people wrote our decision as a new race, the health institution, and all the implications of 18 U.S.C. 16-D outside of the immigration statute were passed, and the health institution and all the 18 U.S.C. section 16-A's as a result of our footnotes? I think that for now, it looks like it's just a judicial decision. So, those issues will not be for the proceeding. Well, we're not going to be voting for us. We won't be voting for the governor. I think he said it was November 24th. I'm not sure if you were ready to vote against the amendment, but I think you did a good job in getting to this point. And I think you're ready to vote against the amendment, as I understand it. And I think you're ready to make a new vote. No, no, no, no. I do not. I think tomorrow, I was ready to ask for that. Johnson is too hard a suitcase. This is a big deal. So, both of these two groups, the KDH and the White House, in an immigration context, I think what we need to do is try to understand what was told us in the coming while, or three years prior to that emergency. Prior to Johnson? Prior to this year's case? Yes. Because it's common law in the 19th century of becoming quasi-immigration. And it's common knowledge that when you meet a German immigration soldier, you don't have such a perpetrator's purpose. And these modern standards are wrong. It's illegal. It's much more broad-based. And it's meaningful. It erases all those intentions that have been set forth. Which does not offer a further resource. It seems more deprecated. And so, there's a temptation in this case of a new kind of standard that was approved by the conservatives. In a matter of fact, when the district court dismissed the 7524C house, it specifically found that the reason you couldn't have such a 24C house is because the government charged, say, Trump of violence twice, and indicated that that was presidential birthright. And it also struck the jury, and it struck the jury that the presidential birthright issue was Trump of violence. Now, in this case of a violent crime, there is a conservative challenge on this group's part. I don't know. So, you don't want such a constitutional standard in your argument. Right. And I also, even though he sort of says in the rec, I mean, that is the basis of the current law. I mean, what's the answer to that question? Because did anybody, and this is a question I'll step on, but did anybody suggest during the jury discussion conference that the court didn't strike the jury that it was Trump of violence, or were you referring to what you're about to say, the current law? Yes. Actually, in terms of 2077, the district court did say that when it passed charge of introvert v. violence, it had to include, of course, the 6th procedural clause, and then it talks about what violence is. Generally, it didn't. I see from that instruction, I think it's more of a kind of opinion, and it's provided in terms of this very court's argument, as a matter of law, that the right to constitutes a criminal violence item is here in the instruction. My recollection is that that's how it was presented to the jury. The parties agreed that the crime of violence issue was presented to the jury. Okay. I would like, in terms of additional questions, I think Mr. Dostoevsky should be able to make it very clear that this court is following the charge of charge of introvert v. violence, and that it is in federal constitution. Can you just bring up where our communication is, versus what we're hearing? I can't hear you. I'm basically hearing from the panel. The question is, as you look to the next few minutes, do you think the court is going to decide in the region that this is a case that the court is going to have a decision to bring this out? Yes. Okay. The next question is, I don't know for you, is if this case should be vacated, should this case still be the decision to bring it out? I think it has to do, so I can say I know that in terms of the case, it was stated in May. I don't know that it was both in 1924, and the rest can't be. So I think that regardless of what happens in the case, there's still going to be an issue here with regards to that. I believe the next panel is interested at all about the parties they currently travel at. So the travel act is a little confusing in this regard, because it says that you have to commit a crime of violence to pursue further and come up with activity, and it seems as though in this particular case, the court would expect the plaintiff's perjury to somehow be consumed as you would want it to be, So the theory on this interstate travel, I mean, I've explored it before, but the theory on it is that this is a violation of the agency, and this is a violation of the policy, and this is a violation of the parties. And I don't know about you, but I'm curious what you think about this, because this is what you're calling a constitutional violation,  as a result of that violation of the agency. Okay. I think it's a problem that the agency, and the agency itself, isn't part of the contract. It's been separated into two different kinds. Specifically, it's called a child violence case. In this case, it was consensual, meaning that it was consensual or free. It was a violation, meaning that it was consensual or free, and it was a violation of the agency's instructions, and it's a constitutional violation, and it's a violation of the agency's contract. I'm not saying that the clients themselves should say it. I'm saying that no one should conduct a burglary and extend an agency-sized committee to be saying that's also a distortion. It's a statutory violation. There's several letters from the agency to the court. I don't think any charges were ever called. I don't see that being an answer, although Melissa has studied about that, but it's to say that the theory is no different than what it was in 1964 when the FBI was trying to show that it was consensual, and the Congress was saying it was. I mean, however, it would have been more robust in being able to ensure that the local and traveling from New York to New Jersey or New York City. I see. And furthermore, I would say the theory was that the plan was pitched in Phoenix, and the client, the drug dealer, did not stay in Phoenix, and neither did the FBI and the Congress in Phoenix or the court themselves. And it's a very false theory. I mean, to do that, I mean, it's not a class of interstate travel. I mean, it's not a culture of social media. Well, I will say that that was the case for us, and that the agency was in charge of it, and they were coming to provide these people for money. So it wasn't something else ongoing. Yes? What if I turn in these people for interstate buses to raise the state's interest in the area? So maybe this is a better question. I think it's a better question because it can further time the chains that you think there needs in mind. That doesn't have to be some sort of exhaustionist activity or you can think about a bus to further that exhaustion. It doesn't have to be that. And I think it is, it's going to be deferred, I think, depending on each law. Well, there's absolutely no reason. No, that's not the reason. They were supposed to be going to Los Angeles to collect money that was owed to whoever sent them the bus tickets. And the FBI is not getting those tickets. Um, this is a very easy statutory piece to overturn. I will note that Mr. and Mrs. Duquesne have already served a substantial portion of their sentence. The bulk of that sentence is the 924C offense. Because of what this court does with the 924C offense, they've already served their 16-page time of the 924C offense. They've already served their 16-page time. Um, and the effect that this court requires to address the 924C is that it has to be placed in a function to serve or to serve on the negative. This is so far past the time of serving on the negative. A further review of the court has not... ...been argued at this point. I'm sorry to hear that. I'm sorry to hear that. I'm sorry to hear that. I'm sorry to hear that. I'm sorry to hear that. And this court doesn't find Mr. and Mrs. Duquesne actually foreseen the end of their time for the 924C offense. They've already served their 16-page time of the 924C offense. Mr. and Mrs. Duquesne have already served far more time than their 16-page sentence which is very interesting. I think it's interesting to understand that we don't usually do this on the law. I mean, if you want to make a formal motion to consider it, I mean, we're not doing it right now, at least in the military. Absolutely. I think that this court's doing a great thing. Um, and I'll say that, um, um, it's a unique case where we, you know, we're in a visual kind of situation where there just needs to be a visual jurisdiction that is going to be very safe, which means that, um, um, there's also going to be a percentage of very safe shots that are going to be So, um, any, uh, additions to these evidence cases are valid. Um, on that sentence, I mean, the felon will be recharged in the, um, one-three-cross-issue or one-hundred-and-six-hundred-issues in the evidence case, which means that there's not that much of variation. Would you think that Congress, or the governors, or civil society should have first-class judges to make statements and, uh, proceed with the statute? Or would it be a one-three-cross-issue? It's not one-three-cross-issue. It's a one-hundred-and-six-hundred-issue. But, again, given that these judges are of this age, um, a four-year is considered a high-value issue. Which, of course, is going to be a very high-value issue if you're going to change the statute. Thank you. Any other questions? Any other questions? Any other questions? Any other questions? Um, if you want to be honest with me, again, this is behind the scenes. Um, if I can address the, uh, the issue tonight in the case, um, the court, if the, if it's perhaps familiar, the court did say in July that it, it was revising the immigration provision that was in the issue in this case. And in this case, excuse me, it was not re-structured. The court did not abide by it. And, indeed, in a constitutionally made incremental definition, it did not see this as an issue in the context of time that, uh, the court is a bridge to the next,  in, in, in, in, in, in, in, in, in, in, in, in, in, in, in, in,  in, in,     in, in,  in,  in, in, in, in, in. The court, as, as I said, this is an institution that facing social, um, issues that we're dealing with in 3D is structural differences and narrowness of, if if if if if if if if if if if if if if if if if if if if if if if if they
judges: Tallman, Clifton, Ikuta